In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-22-00167-CV**

_____

**KIRT MCGHEE, Appellant**

**V.**

**NOVOTERRA CHASE, LLC AND GONET USA, LLC, Appellees**

**On Appeal from the 284th District Court**
**Montgomery County, Texas**
**Trial Cause No. 20-10-12063-CV**

**MEMORANDUM OPINION**

After the residential lease Kirt McGhee ("McGhee") signed for a home expired, he sued his former landlord, Novoterra Chase LLC ("Novoterra") and GoNet USA, LLC ("GoNet"), under a joint enterprise theory, alleging that they had acted in bad faith in withholding his security deposit and by failing to make timely repairs to the Property when he was living in there during the term of the seventeen-month lease. A jury returned a verdict for McGhee and assessed damages, but the

1

trial court rendered judgment solely on the part of the award for McGhee's security deposit and disregarded the part of the jury's award that allowed McGhee to recover half his rent.

In four issues, McGhee complains that the trial court: (1) improperly granted a directed verdict on his causes of action under Property Code sections 92.052 (repair and remedy) and 92.331 (retaliation); (2) erred by granting a directed verdict on attorney's fees; (3) erred in excluding his attorney's testimony on attorney's fees; and (4) denied his Motion to Compel Interrogatory Responses. In one cross-point, Novoterra argues the trial court properly disregarded the jury's answer awarding McGhee damages that amount to half his rent. For the reasons discussed below, we affirm the trial court's judgment awarding McGhee $11,050 for Novoterra wrongfully retaining McGhee's security deposit, court costs, and post-judgment interest. Otherwise, we reverse the trial court's judgment and remand the case to the trial court for further proceedings consistent with this opinion so that a factfinder may consider awarding McGhee reasonable attorney's fees tied to his suit to recover his deposit.

## I. Background

### A. Lease Agreement

McGhee and his wife rented a home in Montgomery County from Novoterra from November 2018 through April 2020. The parties entered a standard Texas

Association of Realtors Residential Lease ("the Lease"). Alejandro de la Maza ("De La Maza") signed the Lease on behalf of Novoterra and helped manage the property for his friend Mario Sandoval ("Sandoval"), who owned Novoterra. Section 18 of the Lease provides that Subchapter B, Chapter 92 of the Texas Property Code governs the landlord's repair obligations under the lease. The parties agreed that written notice to Novoterra for repairs would be provided to De la Maza's email address.

Section 10 of the Lease addressed the payment of a security deposit and return of the deposit at the end of the Lease. The Lease required McGhee to give Novoterra at least thirty days' written notice of surrender before Novoterra was "obligated to account for or refund the security deposit." More specifically, the Lease provides as follows:

> **Notices about Security Deposits**
> **(1) §92.108, Property Code provides that a tenant may not withhold payment of any portion of the last month's rent on grounds that the security deposit is security for unpaid rent.**
> **(2) Bad faith violations of §92.108 may subject a tenant to liability up to 3 times the rent wrongfully withheld and the landlord's reasonable attorney's fees.**
> **(3) The Property Code does not obligate a landlord to return or account for the security deposit until the tenant surrenders the Property and gives the landlord a written statement of the tenant's forwarding address, after which the landlord has 30 days in which to account.**
> **. . .**

(Emphasis original.) The Lease then specified the items that the landlord could deduct from McGhee's security deposit.

## B. Claims

McGhee sued Novoterra and later added GoNet under a joint enterprise theory. The trial court granted a directed verdict as to the claims against GoNet, citing a lack of evidence that it helped manage the property. McGhee did not assign error to GoNet's dismissal on appeal.

Relevant to this appeal, when McGhee was in the trial court he asserted causes of action for breach of contract, repair and remedy, failure to return the security deposit or to provide itemized list of deductions, and landlord retaliation. McGhee also sought attorney's fees per the Lease and under the applicable sections of the Texas Property Code.

## C. McGhee's Testimony

McGhee testified he paid a $3,650 security deposit, and the monthly rent was $3,650. He explained that he and his wife visited the property once before they signed the Lease for about thirty minutes to an hour, but according to McGhee, they were not given an inspection sheet to fill out.

McGhee testified that while they lived in the home, they leased from Novoterra and they had multiple problems with the property, which began the first day when the landlord failed to leave the garage door openers for the home. They

4

also experienced problems with the electrical system, lights in the backyard and pool, HVAC, stove, icemaker, dishwasher, entry doors, landscaping, and rodents, among others. McGhee testified that some electrical issues were never fully addressed, and the landlord's "fix" was cutting and capping wires, which prevented them from using one side of the house. This was in a location where McGhee testified he observed "a very intense heat by an electrical outlet[.]" McGhee testified the whole family had allergy issues, but his kids were most affected since they were upstairs more, where the AC did not flow properly, and they took the children to doctors twice about their allergies.

Under the terms of the lease, requests for repairs that affected matters of health or safety were required to be submitted to the landlord in writing. McGhee testified he submitted multiple such requests by email. McGhee testified, "I personally witnessed arc faults and light bulbs blowing up. I personally witnessed lights that did not work, loose, frayed wires on the ground. I personally witnessed and put my hand on the wall, feeling heat coming off next to an electrical outlet." He said they never resolved the electrical issue, which concerned him, because it was a fire hazard.

McGhee also testified that his children did not want to sleep in their rooms because there were rodents in the home, which left waste behind. According to McGhee, he sent written repair requests about this problem to De la Maza by email,

5

but it was months before this problem was resolved. He also sent written requests about the backyard and the HVAC by email. McGhee testified that the HVAC issue was never addressed, and the issues with the yard were addressed about four months after he notified De la Maza of his complaints. McGhee testified that he possibly paid an AC company to do some work and possibly requested an offset in rent for that amount, but he insisted that he always paid the rent.

McGhee explained that the issue with the garage door openers was the only issue the landlord addressed quickly; everything else took over thirty days if the issue was ever addressed. He insisted they paid rent every month and never missed a payment. McGhee testified that in his opinion, he complied with the Lease, but he did not think that the home was in good condition given the amount of rent he paid. McGhee hired an attorney, who sent a demand letter that included his forwarding address. He also testified that despite timely providing a forwarding address, Novoterra failed to return his security deposit. McGhee testified that he incurred about $30,000 in attorney's fees during the litigation.

## D. Karrie McGhee's Testimony

McGhee's wife, Karrie, also testified. According to Karrie, she observed problems with the electrical, pool, garage doors, pool lights, outdoor lighting, landscaping, dishwasher, HVAC, and rodents. She testified that half the electrical outlets upstairs did not work, and that her children could not sleep because the house

6

had rodents in the attic. Karrie said the defendants did minor repairs but never did any major repairs, which she described as repairs to the outdoor lighting, water issues, and to the electrical system of the house. Karrie testified they paid $3,650 per month in rent, which totaled almost $70,000 during their lease. Karrie testified that in her opinion, they did not get their money's worth for their rent. To Karrie's knowledge, they always paid their rent on time.

Karrie said the landlord removed the rodents and fixed the door but simply capped off the electrical. She testified they could have "burnt down." She believed that the landlord sent two electricians who reported "this is not good."

Karrie testified that per the Lease, the landlord maintained the pool and landscaping. They used the pool often during the day but not at night, because they could not see. She also testified they were constantly "coughing and sneezing." Karrie said that when the lease ended and they left, the house was in better shape than when they moved in, and she described the issues that existed when they moved into the home.

**E. Alejandro de la Maza's Testimony**

De la Maza signed the lease as Novoterra's representative. He testified he helped his friend, Mario Sandoval, manage the property. De la Maza testified that he made decisions about the property, although he sometimes contacted Sandoval in Mexico. De la Maza explained that he did IT work for a living, and this property was

7

the only experience he had in managing residential property. He said GoNet employee Aurora Taylor helped him communicate with the McGhees regarding the property.

De la Maza understood he was responsible for repairing things that made the property uninhabitable or that represented safety issues. He agreed that Section 18(B) of the Lease and the law required him to repair any items that might affect a tenant's health or safety within seven days. De la Maza acknowledged receiving repair requests from McGhee that were in writing and sent to him by email. He recalled sending an electrician to address the electrical issues, who advised the tenants were "overloading the outlet." Even so, De la Maza did not know what the electrician did to fix the problem. He also did not know how long it took before the electrician went to fix the problem at the property. According to De la Maza, they sent a pest control company to eliminate the rodents in the attic. They also had the door to the dryer and icemaker fixed.

De la Maza said he visited the property three to five days before the McGhees moved in, and he said the property at that time was "fine." He testified that the home's prior tenants never had the number of repair issues that the McGhees had with the home, but when the McGhees moved in, they had many issues. He said the McGhees tried to see how far he would go in terms of getting items repaired that were not Novoterra's responsibility. He agreed the McGhees paid $3,650 per month,

8

and the house had a pool, a large backyard, and appliances. He said the McGhees were late paying the rent one month, but he denied the late payment was related to discussions he had with the McGhees about applying that money against needed repairs. De la Maza testified that every time the McGhees broke something, they called him to fix it. He agreed that the McGhees had the right to request repairs, but De la Maza explained they didn't have the right to demand repairs for things that did not exist at the property, like a heater for the pool. De la Maza agreed that the McGhees had a right to have the property in operational condition. As for the complained-of issues, he said that "mostly all of them were repaired."

De la Maza testified the house was not in good condition when the McGhees moved out and described specific damage to the home when they moved out. Novoterra hired On-Site Construction to go through the house and assess its condition.

De la Maza testified the Lease provided the security deposit or itemization of repairs should be sent to the tenant's forwarding address, which McGhee provided through his attorney. He explained that rather than sending the itemization of repairs to McGhee's forwarding address, he sent it to McGhee's attorney because he was instructed that he was to communicate with McGhee only through his counsel. De la Maza felt he complied with the Lease by sending the itemization to McGhee's attorney.

**F. Aurora Taylor's Testimony**

Aurora Taylor ("Taylor"), GoNet's controller and human resources manager, explained her relationship with the owner of property when she testified in the trial. Taylor explained she was asked to assist with the property, and she was trying to help Sandoval and his manager, De la Maza. Taylor said she was not paid to deal with the property, but that instead she was the "middle person" who coordinated repairs, even though she had never done this before. She and McGhee emailed when he had problems with the property, and she estimated that they exchanged 100 emails.

Taylor testified that at one point, McGhee reported feeling heat in the wall. She thought that issue was corrected since they sent a couple of service repairmen, but she did not recall how long it took to repair the issue. She denied it was a month and said at most, it was a couple of weeks. Taylor testified the contractors reported when they repaired things, and they did so that time. Taylor further testified they sent someone to repair the HVAC issue, which did not take long–maybe a week. Taylor said it took several trips for pest control to remove the rodents, because they set traps and actively worked on removing them.

**G. Other Evidence Admitted**

Additional evidence admitted at trial included: a copy of the Lease; a video showing water coming out of an external drain line to the home; Novoterra and

GoNet's business filings with the Texas Secretary of State; McGhee's counsel's redacted attorney's fee invoices; a priority mail envelope that De la Maza sent to McGhee's prior attorney containing an itemized list of deduction from McGhee's security deposit; the letter outlining that accompanied the itemized list; and an email about mediation.

The trial court excluded some of McGhee's evidence, including: (1) emails between McGhee, Taylor, and De la Maza regarding repairs; and (2) demand letters from McGhee's attorneys. Although the trial court excluded the demand letters and correspondence from his previous attorneys when offered by McGhee, including itemized deductions for repairs De la Maza sent to McGhee's attorney, the trial court admitted the same itemized list of deductions when it was offered by Novoterra.

## H. Evidence of Attorney's Fees

McGhee's trial attorney, Kent Motamedi ("Motamedi"), produced his redacted billing invoices that were admitted at trial without objection. McGhee's prior trial attorney's redacted billing invoices were also admitted at trial without objection. Motamedi testified that his hourly rate was $250 per hour, and he spent about fifty-two hours working on the case as of the day before trial. He also explained how he billed in increments of an hour, multiplied that by his hourly rate, and described in his invoices the various tasks that he had performed. Motamedi testified that McGhee's prior attorney, whose invoices were also admitted, billed

$14,000, which he felt was fair and reasonable. At no time did Novoterra's attorney ever object to the above testimony.

Once this testimony was in evidence, McGhee's trial attorney started to offer his opinion on the reasonableness and necessity of the attorney's fees when Novoterra's attorney began objecting to "any opinion testimony" from Motamedi. Novoterra's attorney argued that it sent Request for Disclosures to McGhee under Rule 194.2, and that McGhee had failed to provide a total amount of attorney's fees in response to its requests. Novoterra's attorney also objected that the written fee agreement between McGhee and his counsel were not produced, which was required by Rule 194.2(f). Novoterra's attorney further objected that the invoices did not show any services, because the invoices were heavily redacted. It should be noted that the trial court's Docket Control Order required that: (1) Expert Witness Designation for the McGhees was required 150 days before trial; (2) Discovery Responses were required 90 days prior to trial, which included all written responses and supplements; (3) Expert Challenge Hearings must be set for hearing to occur by 75 days prior to trial; and (4) a Joint Notice Filing was required 14 days prior to trial, where either party could request a Pre-Trial conference. It should be noted that: (1) if McGhee's responses to Novoterra's Request for Disclosure or McGhee's Expert Witness Designation were insufficient or untimely, Novoterra's attorney before trial never filed a Motion to Compel or Motion to Strike or disregard same; (2) before

12

trial, Novoterra's attorney never filed a Motion to Strike or challenge McGhee's attorney from testifying as an expert witness; (3) before trial, Novoterra's attorney in the Joint Notice Filing never requested a Pre-Trial conference to address that McGhee's responses to Novoterra's Request for Disclosure or that McGhee's Expert Witness Designations were insufficient or untimely, or that McGhee's attorney should not be allowed to testify as an expert witness for alleged insufficiencies in these filings; and (4) contrary to any claim that McGee's designations or disclosures violated the trial court's Docket Control Order or the trial court's pretrial requirements, the trial court admitted McGhee's former and current attorneys' redacted billing statements into the evidence at trial without any objection.

The trial court reasoned that the invoices admitted into evidence were insufficient as a matter of law under *El Apple*. The trial court asked what counsel provided during discovery to disclose the total cost, reasonableness and necessity, the tasks performed, and the time spent on the tasks. Motamedi responded that the redacted material went to his mental state and strategy, which constituted core work product. Novoterra's attorney read part of McGhee's response to Request for Disclosure into the record, including that "[h]e's an attorney licensed to practice law, currently serving as lead counsel. He's expected to testify regarding the reasonableness and necessity of the attorney's fees and expenses sought by plaintiff

13

in this matter through trial and post-judgment motions in the event that this case is appealed."

The trial court explained that Motamedi failed to adequately respond to Novoterra's Request for Disclosures outlining his anticipated testimony, and the invoices were insufficient alone to prove up the fees given the heavy redactions. Motamedi responded that he designated himself as an expert with the scope of his testimony and provided redacted invoices. He also argued the invoices contained the dates the work was performed and the hours for that work.

The record shows the invoices provide the billable rate of $250 per hour, date, hours worked on a task in increments like "0.5 hrs." or "3.7 hrs." with a description of legal services like "Correspondence" or "Document Review" followed by redactions of the specific subject matter. Other entries described legal services, things like "Motion to Substitute Counsel & Order" and "Plaintiff's Response to Defendant's No-Evidence Summary Judgment," together with a corresponding date, hours worked, which is then followed by redactions, but the invoices include the amount that was charged.

The trial court explained that despite timely designating himself as an expert, the disclosure was "inadequate" and insufficient for the court to allow counsel to testify about the reasonableness and necessity of his fees. The trial court said that

14

although counsel provided a topic of testimony, he failed to provide an opinion. The following exchange occurred:

> THE COURT: You did an expert witness designation. You described topics. You gave part of the information as it pertains to your hourly fee and that of your paralegal. That's it. That's all I got.
> If I'm going to trial, all I know is you're going to testify that . . . you might testify, that the fees are reasonable, but I don't know what the fees are. I don't know how many hours you put in. You didn't disclose this stuff.
>
> MOTAMEDI: Well, Your Honor, the fees were ongoing. How would I be able to discuss an ongoing fee accumulation? That's my confusion here . . . the items I have there testify that I am going to be testifying to the motion practice, the legal research, so on and so forth. I felt that based on what *Arthur Andersen* states, that that was in compliance to be able to provide notice.
>
> THE COURT: Okay. *Arthur Andersen*, coupled with *El Apple*, coupled with *Rohrmoos* make it very clear that the three of them are to be read in sync. So doing *Arthur Andersen* factors, that's totally great and legit. You listed them; right? You just said . . . I'm going to evaluate per the *Arthur Andersen* factors, but you didn't list them one by one. I mean, literally, I can't look at your thing and know if this fee is . . . fixed or contingent, which is one of the *Arthur Andersen* factors. I'm imagining it's not fixed. I'm imagining you just bill by the hour. This isn't a contingency fee file, but literally I can't read your opinion and know that. I have to read between the lines and use my experience to try to figure it out. That's the problem.
>
> MOTAMEDI: Your Honor, I mean, correct me if I'm wrong, in the expert disclosure, I say that I charge $250 an hour.
>
> THE COURT: You do. How many hours and what's your fee? I mean literally, you're on the witness stand and . . . you're using terms like "approximately 52 hours" and "roughly $14,000."
>
> MOTAMEDI: Right. That's based on my personal knowledge and referencing the invoices.

15

YOLLICK: . . . The problem is that you have to disclose what the expected testimony will be with respect to hours for trial and preparation.

THE COURT: Uh-huh. I mean, he's right. These aren't my rules. These are the Supreme Court rules, but my job is to enforce their rules.

Due to the above, the trial court sustained many objections to Motamedi's testimony, including objections to his testimony about the reasonableness and necessity of his attorney's fees.

The hearing on the attorney's fees testimony and expert disclosure continued the next day, and Motamedi explained,

I would still argue that because my disclosures were timely, because I was designated as an expert, because I believe that my expert designation complies with TRCP 195, as well as, 194, that I should still have the opportunity to finish my testimony on the stand regarding my attorney's fees. Mr. Rose was not done with his examination[.]
. . .
So, in this case, although I understand the Court's opinion and [opposing counsel's] opinion that the billing statements being redacted on their own face may be ambiguous, I still have the ability to look at those statements for my reference and be able to detail the work that I performed, how long it took me to perform, and what specific tasks went into this case that led up to my attorney's fees[.]

Motamedi asserted that his expert designation complied with Texas Rule of Civil Procedure 194 and 195. He also argued that case law allowed for attorneys to provide testimony proving attorney's fees by referencing documents or billing records, and he should be allowed to do so. Finally, he contended that McGhee provided uncontroverted testimony about the fees he paid, the redacted billing

16

invoices have been submitted, and the jury is allowed to consider attorney's fees under the applicable statutes.

Novoterra's attorney argued that to support attorney's fees under *El Apple I*, you must have "an itemized explanation of what the charges are for." Novoterra's attorney further asserted that the disclosures and invoices do not do that. Additionally, Novoterra's attorney contended that "the real issue in this case is a disclosure issue. It's not the itemization." Novoterra's attorney argued that Rule 194.2(f) required the disclosure of the mental impressions and opinions of the expert, and although "[t]he subject matter was disclosed, the mental impressions and opinions were not." Ultimately, Novoterra's attorney characterized it as "a disclosure case, and they failed to make the disclosures."

Following the hearing spanning two days, Motamedi resumed testifying. He testified without objection about his legal experience and that he charges $250 per hour. When asked about whether his hourly rate was reasonable, Novoterra's attorney objected that McGhee had failed to comply with his disclosure obligation under Rule 194.2(f), In response, Motamedi referenced the arguments that he raised during the hearing the trial court conducted outside the jury's presence. The trial court sustained Novoterra's attorney's objection. When questioned about the work referenced on the redacted invoices and for a summary of the work he did for McGhee, Novoterra's attorney objected again based on counsel's failure to comply

17

with his disclosure obligation under Rule 194.2(f), and once again that objection was sustained.

**I. Pretrial Discovery Issues and Exclusion of Evidence**

Before trial and during discovery, McGhee filed his Motion to Compel Defendant, Novoterra Chase, LLC to Provide Responses to Interrogatories and Verification. Novoterra objected to certain interrogatories because they contained discrete subparts, which exceeded the allowed limit of twenty-five, and were overbroad, unduly burdensome, and harassing. The trial court sustained most of Novoterra's objections to the written discovery and noted multiple interrogatories contained discrete subparts, thus interrogatory 14 exceeded the permissible limit and did not require a response.

**J. Directed Verdict**

The defense moved for a directed verdict on multiple causes of action, including 1) those under Property Code sections 92.103, 92.104, 92.052, 92.056, and 92.331–.333, 2) quantum meruit, 3) negligence, 4) common law fraud, 5) attorney's fees, and all claims against GoNet. The trial court granted a directed verdict as to all McGhee's claims against GoNet. The trial court granted the directed verdict as to all McGhee's claims against Novoterra except breach of contract and for failing to return the security deposit under Property Code sections 92.103, 92.104, and

92.109.[1] Regarding attorney's fees, the trial court explained she granted the directed verdict because there was no evidence that the fees were reasonable and necessary.

## K. Jury's Verdict and Final Judgment

McGhee did not object to any portion of the proposed jury charge. Novoterra objected to all questions in the charge and argued there was no evidence or insufficient evidence to submit them to the jury, which the trial court overruled. The trial court submitted the breach of contract claim and failure to return the security deposit claim to the jury.

In response to Question 1, the jury found Novoterra breached the lease. Question 2 then asked,

> What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Kirt McGhee for his damages, if any, that resulted from such failure as found by you in response to Question 1?
>
> Consider the following elements of damages, if any, and none other.
>
> Do not add any amount for interest charges, if any.
>
> Answer separately in dollars and cents for damages, if any.
>
> Security Deposit: _____

---

[1]McGhee did not assign error to the trial court's ruling granting a directed verdict on the quantum meruit claim, negligence claim, common law fraud claim, or claims against GoNet. Consequently, we have limited our discussion of the evidence and procedural history accordingly. *See* Tex. R. App. P. 47.1.

In the blank by Security Deposit, the jury answered "$31,000[2] and $3650." The jury apparently questioned why Question 2 had "Security Deposit:" before the line where it understood it was to decide how much to award McGhee in damages. The jury sent the judge two questions while it was deliberating on its verdict, asking the judge to clarify and wanting to know whether there had been a "misprint." Each time, the trial court responded to the jury's questions that it could not answer, referred the jury to "the instructions already given," and instructed the jury to continue deliberating on its verdict.

Questions 3 through 6 of the charge addressed Novoterra's failure to return the security deposit or provide an itemized list of deductions to McGhee's designated forwarding address. The jury found Novoterra failed to return the security deposit and to provide an itemized list to McGhee's forwarding address, acted in bad faith, and unreasonably retained his security deposit. Question 6 addressed the damages that resulted from Novoterra's wrongfully retaining McGhee's security deposit and asked,

> What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Kirt McGhee for his damages, if any?
>
> Consider the following elements of damages, if any, and none other.

---

[2]If the lease term was about seventeen months, at $3,650/month this would equal $62,050. There was testimony that the McGhees basically had use of half the home, which would amount to about $31,000.

20

Do not add any amount for interest damages, if any.

Answer separately in dollars and cents for damages, if any.

Portion of security deposit wrongfully withheld, if any _____

The jury answered, "$3650.00."

The Final Judgment said it incorporated all jury findings, "except the jury's $31,000 finding in response to Question 2, for which the Court grants Defendant Novoterra Chase, L.L.C.'s Motion to Disregard." The trial court's judgment awarded McGhee the following:

1) Statutory damages in the amount of three times the amount of the security deposit of $3,650.00, plus $100, totaling $11,050.00 for the wrongful retention of the security deposit pursuant to Tex. Prop. Code § 92.109;
2) One-half of the costs of court incurred in this case; and
3) Post-judgment interest accruing on the foregoing amounts at a rate of five percent (5%) per annum from the date of this Final Judgment until paid.

McGhee filed a timely appeal from the trial court's Final Judgment.

## II. Issue One: Evidentiary Rulings

In his first issue, McGhee contends the trial court abused its discretion in excluding his email exhibits and demand letters based on Novoterra's objections to hearsay, relevance and expert testimony.

## A. Standard of Review

"Whether to admit or exclude evidence is a matter committed to the trial court's sound discretion." *Interstate Northborough P'ship v. State*, 66 S.W.3d 213,

220 (Tex. 2001) (citations omitted); *Cleveland Reg'l Med. Ctr., L.P. v. Celtic Props., L.C.*, 323 S.W.3d 322, 337 (Tex. App.—Beaumont 2010, pet. denied) (citations omitted) (noting same and discussing excluded emails in the context of a commercial lease). "To reverse a judgment based on a claimed error in admitting or excluding evidence, a party must show that the error probably resulted in an improper judgment." *Interstate Northborough P'ship*, 66 S.W.3d at 220 (citations omitted); *see also* Tex. R. App. P. 44.1(a)(1); *Cleveland Reg'l Med. Ctr., L.P.*, 323 S.W.3d at 337 (citations omitted). We review the entire record to determine whether the excluded evidence probably resulted in the rendition of an improper judgment. *See Gunn v. McCoy*, 554 S.W.3d 645, 668–69 (Tex. 2018) (citations omitted); *Cleveland Reg'l Med. Ctr., L.P.*, 323 S.W.3d at 337.

**B. Law and Application: The exclusion of the complained-of evidence was harmless where Novoterra's witnesses admitted receiving written notice of McGhee's requested repairs and his forwarding address, which is what McGhee argues on appeal his excluded documents would have shown.**

At issue are McGhee's email communications with De la Maza and Taylor contained in exhibits 2, 2A, and 2B, and demand letters his attorney sent to Novoterra contained in exhibits 5 and 5A. When offered, Novoterra objected that each of these exhibits constituted hearsay, that they contained expert opinions from individuals not designated as experts and were irrelevant. On appeal, McGhee contends that these excluded emails and demand letters would have shown that he

22

provided the requisite notice regarding repairs under the Lease and that Novoterra received them.

As noted above, for the erroneous exclusion of evidence to warrant reversal, the complaining party must show it "probably resulted in the rendition of an improper judgment." *Interstate Northborough P'ship*, 66 S.W.3d at 220; *see also* Tex. R. App. P. 44.1(a)(1); *Cleveland Reg'l Med. Ctr., L.P.*, 323 S.W.3d at 337 (citations omitted). "A successful challenge to evidentiary rulings usually requires the complaining party to show that the judgment turns on the particular evidence excluded or admitted." *City of Brownsville v. Alvarado*, 897 S.W.2d 750, 753–54 (Tex. 1995); *see also Cleveland Reg'l Med. Ctr.*, 323 S.W.3d at 337. Normally, appellate courts will not reverse a trial court's judgment because it erroneously excluded evidence if that evidence is cumulative and not controlling on a material issue dispositive to the case. *See Gunn*, 554 S.W.3d at 668–69; *Cleveland Reg'l Med. Ctr.*, 323 S.W.3d at 338.

Even assuming without deciding that the trial court abused its discretion in excluding each of these exhibits, Novoterra's witnesses admitted they received "hundreds" of email communications requesting repairs from McGhee and did not dispute they constituted notice. Likewise, Novoterra did not dispute that it received a demand letter from McGhee's attorney containing McGhee's forwarding address. Instead, De la Maza admitted he received McGhee's forwarding address but did not

23

send the itemized deductions to that address. He also testified that the Lease required him to send the information to the tenant's forwarding address, but he sent it to McGhee's attorney instead. We conclude the exclusion of the complained-of evidence was harmless, where Novoterra's witnesses admitted receiving written notice of repair requests and McGhee's forwarding address. *See Interstate Northborough P'ship*, 66 S.W.3d at 220; *Cleveland Reg'l Med. Ctr., L.P.*, 323 S.W.3d at 337; *see also* Tex. R. App. P. 44.1(a)(1).

We overrule issue one.

## III. Issue Two: Directed Verdict on Certain Statutory Causes of Action

In his second issue, McGhee complains the trial court improperly granted Novoterra's motion for directed verdict on his statutory claims of (1) repair and remedy and (2) retaliation.

## A. Standard of Review

"We review a trial court's grant of a directed verdict de novo, using the legal sufficiency standard appellate courts apply to no-evidence summary judgments." *See City of Baytown v. Schrock*, 645 S.W.3d 174, 178 (Tex. 2022) (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 810 (Tex. 2005)); *Carias v. Owens*, No. 09-21-00201-CV, 2022 WL 4102783, at \*2 (Tex. App.—Beaumont Sept. 8, 2022, pet. denied) (mem. op.). When no evidence supports a vital fact or the evidence fails to state a claim as a matter of law, a trial court properly grants a

24

directed verdict. *See City of Baytown*, 645 S.W.3d at 178. We consider all the evidence in the light most favorable to the nonmovant and resolve all reasonable inferences arising from the evidence admitted at the trial in the nonmovant's favor, disregarding evidence and inferences to the contrary. *See id.* We may consider any reason why the directed verdict should have been granted. *See Gomer v. Davis*, 419 S.W.3d 470, 476 (Tex. App.—Houston [1st Dist.] 2013, no pet.). "In reviewing a trial court's granting of a directed verdict, we must determine whether there is more than a scintilla of evidence to raise a fact issue on each element of the plaintiff's claim." *Rohrs v. Hartz*, No. 09-19-00196-CV, 2021 WL 2677422, at *9 (Tex. App.—Beaumont June 29, 2021, no pet.) (mem. op.) (citing *Coastal Transp. Co. v. Crown Cent. Petroleum Corp.*, 136 W.W.3d 227, 233 (Tex. 2004)).

"When a trial court does not specify the basis for a directed verdict, an appellant has the burden of discrediting each independent ground asserted in the directed-verdict motion, and we must affirm if the appellant fails to challenge each of the possible grounds for the trial court's ruling." *See Rush v. Ace Am. Ins. Co.*, No. 01-18-00402-CV, 2019 WL 2932846, at *6 (Tex. App.—Houston [1st Dist.] July 9, 2019, pet. denied) (mem. op.) (citations omitted); *see also McKelvy v. Barber*, 381 S.W.2d 59, 62 (Tex. 1964) (failure to address all grounds raised in directed-verdict motion waives complaint); *Curtis v. Urbina*, No. 06-19-00028-CV, 2019 WL 4124632, at *4 (Tex. App.—Texarkana Aug. 30, 2019, pet. denied) (mem. op.)

(concluding that where appellants failed to challenge all grounds of the trial court's directed verdict, they forfeited their point of error complaining of same); *Hycarbex, Inc. v. Anglo-Suisse, Inc.*, 927 S.W.2d 103, 108 (Tex. App.—Houston [14th Dist.] 1996, no writ) (noting that burden was on appellant to challenge both directed-verdict grounds where trial court did not specify the grounds).

**B. Law and Application: We must affirm the directed verdict on repair and remedy and retaliation.**

### 1. Repair and Remedy

Texas Property Code section 92.052 governs a landlord's duty of diligent repair and instructs:

> (a) A landlord shall make a diligent effort to repair or remedy a condition if:
> (1) the tenant specifies the condition in a notice to the person to whom or to the place where rent is normally paid;
> (2) the tenant is not delinquent in the payment of rent at the time notice is given; and
> (3) the condition:
> (A) materially affects the physical health or safety of an ordinary tenant; or
> (B) arises from the landlord's failure to provide and maintain in good operating condition a device to supply hot water of a minimum temperature of 120 degrees Fahrenheit.

Tex. Prop. Code Ann. § 92.052. The Supreme Court of Texas determined that section 92.052 "imposes a repair obligation only if all its elements are satisfied." *Phila. Indem. Ins. Co. v. White*, 490 S.W.3d 468, 486 (Tex. 2016). "[A] tenant's repair

remedies under subchapter B are conditioned on the existence of a duty under section 92.052." *Id.* at 485 (citation omitted). To establish a landlord's liability for failure to repair or remedy a condition, the plaintiff must establish:

> (1) the existence of a landlord-tenant relationship; (2) a condition on the leased property that materially affected the physical health or safety of an ordinary tenant; (3) that the condition was either caused by ordinary wear and tear or not caused by the tenant, a lawful occupant, a member of the tenant's family, or the tenant's guest or invitee; (4) that the tenant gave the landlord notice to repair or remedy the condition; (5) that the tenant was not delinquent in paying rent when notice of the condition was given; and (6) that the landlord had a reasonable time to repair or remedy the condition but did not make a diligent effort to do so.

*Hamaker v. Newman*, No. 02-19-00405-CV, 2022 WL 714554, at *12 (Tex. App.—Fort Worth Mar. 10, 2022, no pet.) (mem. op.) (citing Tex. Prop. Code Ann. §§ 92.052, .056(b)); *see also Griesinger v. Centennial Westway Park, LP*, No. 09-21-00124-CV, 2023 WL 4778098, at *5 (Tex. App.—Beaumont July 27, 2023, no pet.) (mem. op.) (quoting Tex. Prop. Code Ann. § 92.056(b)).

To prove failure to repair or remedy action under Section 92.056(b), a tenant must establish the landlord had a reasonable time to repair or remedy the condition after receiving notice but did not make a diligent effort to do so. *See Gioffredi v. Retreat at Riverstone*, No. 01-21-00627-CV, 2022 WL 17981570, at *5 (Tex. App.—Houston [1st Dist.] Dec. 29, 2022, pet. denied) (mem. op.); *Hamaker*, 2022 WL 714554, at *13; *see also* Tex. Prop. Code Ann. § 92.056(b)(4), (b)(5). Section 92.056 does not require a landlord to successfully repair or remedy a materially

27

harmful condition, but it does require a "diligent effort." *Hamaker*, 2022 WL 714554, at *13; *see also Gioffredi*, 2022 WL 17981570, at *5. Under section 92.056(d), a rebuttable presumption exists that seven days "after the date the landlord receives the tenant's notice under Subdivision (1) and, if applicable, the tenant's subsequent notice under Subdivision (3), is a reasonable time." *Gioffredi*, 2022 WL 17981570, at *5 (citing Tex. Prop. Code Ann. § 92.056(d)). "To rebut that presumption, the date on which the landlord received the tenant's notice, the severity and nature of the condition, and the reasonable availability of materials and labor and of utilities from a utility company must be considered." Tex. Prop. Code Ann. § 92.056(d); *see also Gioffredi*, 2022 WL 17981570, at *5 (citation omitted).

A tenant's remedies under Texas Property Code, Chapter 92, subchapter B, including Sections 92.056 and 92.0563, are conditioned on the existence of a duty under Section 92.052. *See Phila. Indem. Ins.*, 490 S.W.3d at 480. Along with outlining a landlord's duties to a tenant, section 92.052 addresses the form of notice the tenant is required to give the landlord regarding conditions allegedly requiring repair. *See* Tex. Prop. Code Ann. §§ 92.052(a), (d); *Brown v. Oaks Riverchase Apartments*, No. 12-23-00161-CV, 2024 WL 739111, at *4 (Tex. App.—Tyler Feb. 22, 2024, no pet. h.) (mem. op.).

Novoterra moved for directed verdict on four grounds, arguing there was no evidence: (1) of the cost of repairs; (2) that any conditions materially affected the

28

physical health or safety of an ordinary tenant; (3) the tenant gave the landlord a subsequent written notice via certified mail or another form of mail that allowed tracking under section 92.056(b)(3); or (4) that the landlord had a reasonable time to repair or remedy the condition after the landlord received the notice under subpart 1 or the tenant's subsequent notice under subpart 3. The trial court addressed each of the four grounds individually. The trial court denied the directed verdict as to the element that it materially affected the health and safety of the family. As to the cost of repairs, McGhee argued that the statute did not require him to show the actual costs of repairs incurred, but the trial court ultimately granted the directed verdict and stated, "I have no evidence as to the cost of repair." The trial court began going through each basis for directed verdict urged by Novoterra where the trial court also granted the directed verdict on the lack of notice under 92.056(b)(3) and a lack of evidence on the landlord having reasonable time to repair and remedy after receiving notice as a ground. In summary, the trial court indicated it denied the motion for directed verdict only on the material health and safety ground. Therefore, on appeal, McGhee was required to challenge the other grounds that could have independently supported the directed verdict on the repair and remedy claims. *See McKelvy*, 381 S.W.2d at 62; *Rush*, 2019 WL 2932846, at *6 (citations omitted). Yet, McGhee's brief focuses solely on the method of notification element. He does not explain why or how the evidence at trial precluded a directed verdict on the additional element of

29

whether the landlord had a reasonable time to repair or remedy the condition after receiving notice. *See* Tex. Prop. Code Ann. § 92.056(b)(4); *Hamaker*, 2022 WL 714554, at *12 (citations omitted). This is a requisite element under section 92.056(b)(4) and a ground Novoterra argued in its motion for directed verdict. *See* Tex. Prop. Code Ann. § 92.056(b)(4); *Hamaker*, 2022 WL 714554, at *12 (citations omitted) (outlining elements for repair and remedy). Since McGhee failed to challenge grounds (1), (3) and (4) on appeal, we must affirm the trial court's directed verdict. *See Rush*, 2019 WL 2932846, at *6; *see also McKelvy*, 381 S.W.2d at 62; *Curtis*, 2019 WL 4124632, at *4; *Hycarbex, Inc.*, 927 S.W.2d at 108.

We overrule issue two as to the repair and remedy claims.

## 2. Retaliation

At trial, Novoterra moved for directed verdict under Property Code section 92.331 and argued that there was "no evidence in this case of any sort of action that was retaliation under Texas law." As part of issue two, McGhee contends that the trial court improperly granted the directed verdict on his retaliation claim and that a claim under section 92.331 encompasses the landlord's failure to make repairs. Novoterra responds that McGhee fails to point to any evidence that it committed any retaliatory acts described in section 92.331(b).

If a tenant has given notice of repair or attempted to exercise a remedy under Texas Property Code chapter 92, then section 92.331(b) prohibits a landlord from retaliating against a tenant by:

> (1) filing an eviction proceeding, except for the grounds stated by Section 92.332;
> (2) depriving the tenant of the use of the premises, except for reasons authorized by law;
> (3) decreasing services to the tenant;
> (4) increasing the tenant's rent or terminating the tenant's lease; or
> (5) engaging, in bad faith, in a course of conduct that materially interferes with the tenant's rights under the tenant's lease.

Tex. Prop. Code Ann. § 92.331(b). The statute prohibits the landlord from taking the affirmative enumerated actions in response to receiving a repair notice. We agree that McGhee's brief fails to direct us to any specific evidence or failures to repair in the record that constituted retaliatory conduct by depriving him of use of the premises, decreasing services to him, or engaging in a bad-faith course of conduct materially interfering with his rights under the Lease, as he complains. *See id.* 92.331(b)(2)–(3), (5). Without this, he has not shown a fact issue existed on each element of his retaliation claim that would preclude the directed verdict. *See id.*; *see also Coastal Transp. Co.*, 136 S.W.3d at 233; *Rohrs*, 2021 WL 2677422, at *9. We overrule this issue as it relates to the retaliation claim.

## IV. Issue Three: Attorney's Fees

In his third issue, McGhee argues the trial court abused its discretion in sustaining Novoterra's objections during counsel's attorney's fees testimony and by

31

granting a directed verdict on attorney's fees. Novoterra cites Texas Rule of Civil Procedure 194.2(f) and counters that McGhee failed to produce a written fee agreement, failed to disclose under Rule 194.2(f) "his opinions about the amount of his reasonable and necessary fees for trial and preparation and for appeals," and failed to produce fee bills until fourteen days before trial instead of the deadlines provided under Rule 194.2(f) and Rule 195.

At trial, Novoterra complained there was no disclosure of the total attorney's fees amount. The trial court likewise noted that "the words were not an adequate discovery disclosure related to those tasks and to the total amount through the time of trial." The trial court and Novoterra also cited several cases for the proposition that McGhee's disclosures were inadequate. *See, e.g., Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 505–06 (Tex. 2019) (concluding evidence was legally insufficient to support the attorney's fee award and remanding); *El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 765 (Tex. 2012) (holding that the evidence did not provide the trial court with legally sufficient evidence to calculate a reasonable fee award using the lodestar method); *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818–19 (Tex. 1997) (outlining factors to consider reasonableness and necessity of fees to support an award). Novoterra and the trial court characterized the problem as a "disclosure" issue.

Although it is undisputed that McGhee's attorney was timely disclosed as an attorney's fees expert who would testify as to the reasonableness and necessity of the fees through trial, the trial court ultimately determined the disclosure was inadequate under Rule 194.2(f). Specifically, the trial court explained the disclosure failed to contain counsel's opinion about what a reasonable and necessary fee was in the case. After determining the disclosure was inadequate, the trial court sustained Novoterra's objections to McGhee's counsel's testimony about the reasonableness and necessity of the fees. The trial court later granted Novoterra's motion for directed verdict since there was no evidence of the reasonableness and necessity of the fees.

## A. Standards of Review

We review the trial court's decision to exclude an expert's testimony for an abuse of discretion. *See K-Mart Corp. v. Honeycutt*, 24 S.W.3d 357, 360 (Tex. 2000); *Frazer Transp., Inc. v. Transafe, Inc.*, No. 01-06-00824-CV, 2017 WL 3081243, at *3 (Tex. App.—Houston [1st Dist.] July 20, 2017, no pet.) (mem. op.) (stating same in context of expert testimony on attorney's fees). A trial court abuses its discretion if it acts arbitrarily, unreasonably, or without reference to any guiding rules or principles. *Iliff v. Iliff*, 339 S.W.3d 74, 78 (Tex. 2011) (citations omitted); *see Carpenter v. Cimarron Hydrocarbons Corp.*, 98 S.W.3d 682, 687 (Tex. 2002). "A trial court also abuses its discretion by failing to analyze or apply the law

33

correctly." *Iliff*, 339 S.W.3d at 78 (citation omitted). The party seeking to reverse a judgment based on an evidentiary error must prove it probably resulted in an improper judgment or prevented the appellant from properly presenting the case to the appellate court. *See* Tex. R. App. P. 44.1(a); *Owens–Corning Fiberglass Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998); *see also Frazer Transp.*, 2017 WL 3081243, at *3.

We employ the same standard of review for a directed verdict as outlined in our discussion of the statutory claims above.

**B. Law and Application: The trial court abused its discretion by excluding McGhee's attorney's testimony on the reasonableness and necessity of his fees on the basis that the opinion was inadequately disclosed, and the error constituted harmful error.**

**1. <u>Abuse of Discretion in the Exclusion of Evidence</u>**

As applicable to this lawsuit, Texas Rule of Civil Procedure 194.2(f) required a party to disclose the following for any testifying expert on request:

> (1) the expert's name, address, and telephone number;
> (2) the subject matter on which the expert will testify;
> (3) the general substance of the expert's mental impressions and opinions and a brief summary of the basis for them, or if the expert is not retained by, employed by, or otherwise subject to the control of the responding party, documents reflecting such information;
> (4) if the expert is retained by, employed by, or otherwise subject to the control of the responding party:
> > (A) all documents, tangible things, reports, models, or data compilations that have been provided to, reviewed by, or prepared by or for the expert in anticipation of the expert's testimony; and
> > (B) the expert's current resume and bibliography[.]

34

Tex. R. Civ. P. 194.2(f).[3] Rule 194.2(f) does not require the production of fee agreements, and nothing in the record shows Novoterra sent a request for production asking for fee agreements or bills. *See id.*; *see also Carpenter v. Carpenter*, No. 02-10-00243-CV, 2011 WL 5118802, at *8 (Tex. App.—Fort Worth Oct. 27, 2011, pet. denied) (mem. op.) (concluding where party failed to show it sent a request for production of an attorney's fee agreement, the trial court did not abuse its discretion by allowing the attorney to testify where no fee agreement was produced in response to request for disclosure). Absent a request for production for the fee agreement or bills, McGhee had no duty to produce those documents under Rule 194.2(f). *See Carpenter*, 2011 WL 5118802, at *8.

We now turn to the adequacy of the disclosure. Other courts have addressed allegedly deficient attorney's fees expert disclosures under Rule 194.2(f). *See, e.g., Cresson Int., LLC v. Rooster*, No. 02-21-00366-CV, 2022 WL 3904968, at *12 (Tex. App.—Fort Worth Aug. 31, 2022, pet. denied) (mem. op.); *Frazer Transp., Inc.*, 2017 WL 3081243, at *3; *Kim v. Sanchez*, No. 02-12-00465-CV, 2014 WL 4364170,

---

[3] Since this case was filed in May 2020, former Rule 194.2 applies to this case. *See* Tex. R. Civ. P. 194.2(f). The rule governing expert disclosures can now be found in Rule 195.5, which applies to cases filed on or after January 1, 2021. *See id.* 195.5; Order, Misc. Docket No. 20-9153 (Tex. Dec. 23, 2020). The amendments made certain disclosures mandatory, even absent a request, including expert disclosures. *See* Tex. R. Civ. P. 195.5.

at *4 (Tex. App.—Fort Worth Sept. 4, 2014, pet. denied) (mem. op.); *Goldman v. Olmstead*, 414 S.W.3d 346, 364–65 (Tex. App.—Dallas 2013, pet. denied).

In *Kim v. Sanchez*, the disclosure stated the attorney was "expected to testify regarding the reasonable and necessary attorney fees that were necessary in prosecuting this case and in rebuttal to any attorney fee testimony offered by an expert on behalf of Defendant." 2014 WL 4364170, at *4. Our sister court in Fort Worth held that disclosure sufficient "to give the 'general substance' of that expert's anticipated testimony, especially when, as here, the responding party is seeking fees for representation during the entire litigation, which are not determinable at the time of disclosure." *Id.* (citations omitted). That court reaffirmed its holding after the Supreme Court of Texas decided *Rohrmoos*, explaining that decision did not undercut its earlier analysis in *Kim v. Sanchez*. *See Cresson Int.*, 2022 WL 3904968, at *12. There, the complaining party argued that the Rule 194.2(f) disclosures for attorney's-fees experts required producing attorney's fees evidence before the discovery cutoff. *See id.* at *11. The Fort Worth court explained that "*Rohrmoos* involved what's needed to prove up fees, not the sufficiency of the disclosures." *Id.* A disclosure that identifies an attorney's fees expert and states the expert will testify about the reasonableness and necessity of attorney's fees "is sufficient to give the 'general substance' of that expert's testimony, especially when the responding party is seeking fees for representation during the entire litigation, which are not

36

determinable at the time of disclosure." *DDR DB Stone Oak, LP v. Rector Party Co.,* No. 04-17-00018-CV, 2017 WL 6032541, at *6 (Tex. App.—San Antonio Dec. 6, 2017, no pet.) (mem. op.) (citing *Kim*, 2014 WL 4364170, at *4) (other citations omitted); *see Goldman*, 414 S.W.3d at 365 (explaining that when a party seeks to recover fees incurred through litigation, it "necessarily preclude[s] opinions on the reasonableness and necessity of total fees at the time of disclosures[]").

Although the actual disclosures are not provided in the record, Novoterra's counsel read the following portion of McGhee's Rule 194.2(f) disclosure into the record, telling the trial court,

> The Request for Disclosure response merely says that he's an attorney licensed to practice law, currently serving as lead counsel. He's expected to testify regarding the reasonableness and necessity of the attorney's fees and expenses sought by plaintiff in this matter through trial and post-judgment motions in the event that this case is appealed.

The record also reflects that the disclosure included an hourly amount billed by the attorney of $250. Novoterra's counsel contended that in the response to the Request for Disclosure, "there is no disclosure of what the amount of the attorney's fees would be[.]"

We reject Novoterra's argument that because McGhee failed to provide a total fee amount, the disclosures were inadequate. The trial court seemingly conflated the adequacy of a disclosure with the sufficiency of the evidence to support an award of attorney's fees. *See Cresson Int.*, 2022 WL 3904968, at *11 (explaining that

37

*Rohrmoos* addressed the sufficiency of evidence to support an attorney's fee award). In doing so, it misapplied the law and unreasonably concluded the response to the Request for Disclosure was inadequate absent an opinion on the amount of attorney's fees. *See Iliff*, 339 S.W.3d at 78 (misapplying the law and acting arbitrarily or unreasonably is an abuse of discretion). Those fees were necessarily undeterminable at the time of disclosure, since McGhee specified he was seeking fees through the litigation. *See DDR DB Stone Oak*, 2017 WL 6032541, at *6; *Kim*, 2014 WL 4364170, at *4; *Goldman*, 414 S.W.3d at 365. Like our sister courts, we conclude McGhee's timely Rule 194.2(f) disclosure identifying an expert who would testify about the reasonableness and necessity of attorney's fees incurred through the litigation was adequate to provide the "general substance" of the expert's testimony where he indicated he was seeking fees incurred through litigation. *See Cresson Int.*, 2022 WL 3904968, at *12; *DDR DB Stone Oak*, 2017 WL 6032541, at *6; *Kim*, 2014 WL 4364170, at *4; *Goldman*, 414 S.W.3d at 365. The trial court abused its discretion when it determined otherwise and subsequently excluded McGhee's attorney's testimony about the reasonableness and necessity of his fees on that basis. *See Cresson Int.*, 2022 WL 3904968, at *12; *DDR DB Stone Oak*, 2017 WL 6032541, at *6; *Kim*, 2014 WL 4364170, at *4; *Goldman*, 414 S.W.3d at 365.

## 2. Evidence of Trial Court's Further Abuse of Discretion

### A.      First Hearing on Attorney's Fees:

In addition to the matters discussed in **H. Evidence of Attorney's Fees** under

**1. Background** above, the following are additional quotes from the hearing outside

of the jury's presence on the trial court's denial of allowing McGhee's attorney to

further testify on his attorney's fees claim:

a. THE COURT: Those redactions are not sufficient evidence for you to take the case to a jury under *El Apple*. So my question to you is, what have you disclosed to Mr. Yollick?

   MR. MOTAMEDI: Aside from the invoices, nothing. **But I'd like to make mention that those redactions also go to the attorney's mental state and stratagem. That is a core work product that I can –**

   THE COURT: I understand that, but, you know, life in litigation, full of tough choices. **If you want attorney's fees, you've got to disclose. If you don't want to disclose, do not ask for attorney's fees.**

   MR. MOTAMEDI: Well, Your Honor, the invoices are –

   THE COURT: **You can't take them both. The Supreme Court has made that clear.**

   . . .

b. THE COURT: Okay. 6-24-21, two and a half hours. "Draft work, motion", redaction. You see, this is the struggle, is that you're giving me a topic of the things you're working on. You're drafting something and/or working on a motion. You're doing review -- review and analysis. What is that? Is that legal research? Are you looking at documents in your file? I don't know. **And the Supreme Court has said, you know, he's entitled to know and that's part of what you have to disclose to get these fees.**

39

MR. MOTAMEDI: Your Honor, since that personalized the document -- I mean, correct me if I'm wrong, but I thought my testimony was sufficient to prove up the documents.

THE COURT: **Your documents are in. Your documents are filled with redactions, so there is nothing in your documents that fulfills the requirements of the Supreme Court to not redact if you want the fees.**

. . .

c.  THE COURT: So here is the one thing I'm going to say for our record. There is a very big part of me that wishes that the Supreme Court -- and that's why I'm saying this because if y'all take up an appeal, I say this in every record where attorney's fees are an issue. If this makes its way to the Supreme Court, can you guys please fix this? Because, effectively, you don't want anybody to ever get attorney's fees, and that's fine, but let's just, you know, maybe make a law that says that. Instead, the difficulty of getting attorney's fees has become so great that it is, in fact, very difficult for anybody to ever actually meet the mark.

And bear in mind for trial judges, our struggle is, if they don't meet the mark, there is still some evidence to submit the issue to the jury. And then the trick becomes it goes up on appeal. The finding is that there is a failure to segregate, this wasn't lodestar compliant, there is no justification for enhancement, whatever the decision is, and it comes right back down to try it again. I've had more trials on retrial on attorney's fees, not from me, Judge Wood. I'm just saying that to you. But I see this all the time.

So if you folks in Austin feel like people just shouldn't be allowed to collect their attorney's fees and you believe so strongly in the American Rule, that's fine, but clean it up, please, because this is the mess that we go through. Thanks for listening.

**Mr. Motamedi, I have an inadequate disclosure. I understand that you are protecting your client's privilege as to your work product and as to the communications that you are sharing with your client. I get that. And I don't know that your choice to redact these things to protect that privilege is the wrong**

**choice, but it is one that's fundamentally inconsistent with what the Supreme Court expects these days. They set the bar high. I know. But it's the reality.**

. . .

d. THE COURT: Uh-huh. I mean, he's right. These aren't my rules. These are the Supreme Court rules, but my job is to enforce their rules.

MR. MOTAMEDI: Your Honor, I guess the part that I'm lost at is if -- because now I'm -- I guess this is what the comment to the Supreme Court. **We are drawing a fine line between revealing confidential information and –**

The COURT: **No, there is no fine line. You have to choose to reveal confidential information to get your fees. I mean, honestly, that's where they've put you.**

[**Emphases added.**]

## B.    <u>Second Hearing on Attorney's Fees</u>:

At the conclusion of the attorney fee hearing on April 26, 2022, the trial was recessed for that day. However, at the commencement of trial on April 27, 2022, McGhee's attorney once again requested a continuation of the attorney fee hearing outside of the jury's presence. The following contains additional relevant quotes from the second hearing:

MR. MOTAMEDI: … I don't have the case before me, which -- but I'm going to argue just for the record purposes, that I believe the case is *E.I. du Pont,* where most of it was regarding discovery disputes, one of which the Supreme Court determined that the attorney/client agreements, as well as what the terms and conditions of the attorney/client are, can be considered work product.
. . .

41

… So regarding the redaction of the attorney's fees, I would also argue that that goes to either work product, regarding the attorney's mental impression or the discussion with the client, which is, again, a privileged information, and we have the right to assert that privilege. . . .

MR. MOTAMEDI: In the *City of Laredo* [v. *Montano*] case, ..., they did actually mention *El Apple* ..., and I'm going to quote from them very quickly. So here it says, "Contrary to the City's argument, *El Apple* does not hold that a lodestar fee can only be established through time records or billing statements. We instead -- said instead that an attorney could testify to the details of his work, but that in all but the simplest cases, the attorney would probably have to refer to some type of record or documentation to provide this information."
. . .

… Now, I would argue, for purpose of today, this is a pretty simple case. ... It's a simple residential landlord/tenant dispute. I would argue that's a simple case.
. . .

… Now, even if we argue that's not a simple case, I would still argue that because my disclosures were timely, because I was designated as an expert, because I believe that my expert designation complies with TRCP 195, as well as, 194, that I should still have the opportunity to finish my testimony on the stand regarding my attorney's fees. Mr. Rose was not done with his examination of me at the time that Mr. Yollick had objected regarding my fee bills. And then based on what the language of the *City of Laredo* mentioned, it sounds, from my opinion, the Supreme Court's opinion, that the attorney can still testify and refer to some type of record documentation.
MR. MOTAMEDI: So in this case, although I understand the Court's opinion and Mr. Yollick's opinion that the billing statements being redacted on their own face may be ambiguous, I still have the ability to look at those billing statements for my reference and be able to detail the work that I performed, how long it took me to perform, and what specific tasks went into this case that led up to my attorney's fees.

MR. MOTAMEDI: Now, I would also argue one other case, and this is a recent decision. ... This is *Jones-Hospod vs. Maples*. ... In this case, which is -- this is from the Court of Appeals, Third District.

They mention the plenary power of the court, as well. So they argue that "To determine whether the evidence is sufficient to support the Court's exercise of discretion" regarding attorney's fees, "we engage in two prong inquiry: whether the" -- excuse me, Your Honor – "whether the trial court had sufficient information upon which to exercise its discretion and whether the trial court erred in its application of discretion. The focus of the first inquiry is the sufficiency of the evidence, and we apply the applicable sufficiency standards of review. Under the second inquiry, we must decide whether, based on the evidence before it, the trial court made a reasonable decision."

. . .

MR. MOTAMEDI: My final argument would be that there has been ancillary testimony from Mr. McGhee as to what fees he has paid. And his testimony at this point in time is uncontroverted. At the same time, those billing fees that we've submitted, both from Mr. Stephens' office, as well as mine, are admitted at this time. And the jury is allowed to consider those regarding attorney's fees and by statute, whether it's Civil Practice and Remedies Code 38.001, or whether it's Property Code 92.109, or whether it's Property Code 92.0563, the statutes allow us to recover attorney's fees, and I believe it is the fact finder's decision to be able to allocate what figure they would like to provide.

. . .

MR. MOTAMEDI: *El Apple* did does not touch upon disclosure issues. And, again, I fail to see how my disclosures are lacking based on 195 and 194.

. . .

MR. MOTAMEDI: … *El Apple* did not touch upon the fact of a – I'm sorry -- the fact of a confidentiality or privilege issue, which is actually my forefront argument for the appellate court to take up on consideration, but it was simply because there was lacking evidence, which is inapposite to this case because we have both the billing records and testimony that is – we're midway through the testimony.

. . .

MR. MOTAMEDI: Even though Mr. Yollick is arguing that my mental impressions were not disclosed, I would argue that they were. They were just more general in nature, which, again, would be more apposite at the time of taking the stand and I'll testify in detail as to what exactly went into the case.

I would also argue that Mr. Yollick has waived that argument, because there has never been an issue regarding disclosures up until the time of trial. Actually, up until the time that I was midway through my testimony. So for Mr. Yollick to now come past the 11th hour, I would argue at this point, and say that I didn't provide proper expert disclosures, to me, that argument has been waived. . . .
. . .

MR. MOTAMEDI: But I would argue in the alternative that I should be able to take the stand, because, again, *El Apple* does not address disclosures. And *El Apple* is a stark contrast to today, where we have billing and we have testimony, namely my testimony. And the Supreme Court was very clear in the *City of Laredo* case that *El Apple* is not the only way to be able to get attorney's fees in or testimony in.

And so, again, I would argue first, that I should be able to take the stand and testify to my fees. And Mr. Yollick will have the opportunity to cross-examine me. Second, I would argue that the billing should still come in for a limited purpose, if need be, for a limited purpose, but it should come in never the less.

And from my understanding yesterday, Mr. Yollick only objected to my invoicing. I haven't heard any objection yet regarding Mr. Stephens' invoicing. I may be incorrect on that. Maybe his objection is an umbrella objection, so I'll stand corrected on that issue. Finally, Mr. McGhee's testimony also goes to attorney's fees. And, again, it is uncontroverted.

So regardless of which way we want to pull this, at the end of the day, the jury should have the right to decide whether my client can be reimbursed, if he is the prevailing party.

44

At the completion of this second hearing there was no further ruling by the trial court, so the jury was brought back in, and Mr. Motamedi again took the stand to complete his testimony. Once Mr. Motamedi was asked about his reasonable hourly rate, Mr. Yollick objected as to the Rule 194.2(f) disclosures, which the trial court sustained. When Mr. Motamedi attempted to rely upon the previously admitted invoices, Mr. Yollick again objected as to the Rule 194.2(f) disclosures, which the trial court again sustained. When Mr. Motamedi was asked to give a brief summary of what he did for Mr. McGhee, Mr. Yollick again objected as to the Rule 194.2(f) disclosures, which the trial court again sustained. Since Mr. Yollick objected to all questions asking for Mr. Motamedi's opinion, which were sustained by the trial court, Mr. Motamedi's testimony ended.

### C. Legal Standard:

Again, we review the trial court's decision to exclude an expert's testimony for an abuse of discretion. *See K-Mart Corp. v. Honeycutt*, 24 S.W.3d 357, 360 (Tex. 2000); *Frazer Transp., Inc. v. Transafe, Inc.*, No. 01-06-00824-CV, 2017 WL 3081243, at *3 (Tex. App.—Houston [1st Dist.] July 20, 2017, no pet.) (mem. op.) (stating same in context of expert testimony on attorney's fees). A trial court abuses its discretion if it acts arbitrarily, unreasonably, or without reference to any guiding rules or principles. *Iliff v. Iliff*, 339 S.W.3d 74, 78 (Tex. 2011) (citations omitted); *see Carpenter v. Cimarron Hydrocarbons Corp.*, 98 S.W.3d 682, 687 (Tex. 2002).

45

"A trial court also abuses its discretion by failing to analyze or apply the law correctly." *Iliff*, 339 S.W.3d at 78 (citation omitted).

We disagree with the trial court's position referenced in A. <u>First Hearing on Attorney's Fees</u>: a. – d. above.

In *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, our Texas Supreme Court noted that "[c]ontemporaneous billing records are not required to prove that the requested fees are reasonable and necessary." *See* 578 S.W.3d at 502. Further, "*El Apple* does not hold that a lodestar fee can only be established through time records or billing statements." *City of Laredo v. Montano*, 414 S.W.3d 731, 736 (Tex. 2013) (per curium). However, billing records can be used to prove that the requested fees are reasonable and necessary. *Rohrmoos Venture,* 578 S.W.3d at 502. In the simplest of cases, an attorney could testify to prove these details, but the attorney could review the billing records to help prove up this information. *Id.* The records would be available for production, which would form a basis for testifying on reasonableness and necessity, and would permit cross-examination. *Id.* Since McGhee's billing records were admitted into evidence without any objections to same, his attorney should have been allowed to testify that the requested fees are reasonable and necessary and then respond to any cross-examination. *See Id.* at 498–502. It should be noted that McGhee's attorney claimed that the failure to object amounted to waiver. After that testimony, it would then be up to the trial court to

determine if the requisite details have been met and are legally sufficient to support a fee award. *See Id.* at 506.

Regarding McGhee's attorneys' redacted invoices, in *KBIDC Investments, LLC v. Zuru Toys Inc.*, No. 05-19-00159-CV, 2020 WL 5988014, at *22 (Tex. App.-Dallas Oct. 9, 2020, pet. denied) (mem. op.), the Appellants claimed that excessive redaction of the Appellees' attorneys' invoices prevented a meaningful evaluation of the tasks performed to allow the invoices to be admitted into evidence for the recovery of attorneys' fees. However, the Dallas Court of Appeals held that "… attorney invoices are routinely redacted when offered into evidence to protect attorney–client and work-product privileges." *Id.* The sister court went on to say:

> The supreme court has not required that parties waive their attorney–client and work-product privileges when seeking to recover attorney's fees from opposing parties. We decline to do so. [Appellees'] attorneys provided a great deal of information about the fees, and their lead counsel testified and was cross-examined by opposing counsel about the invoices. We conclude that the redactions in the attorney's-fees invoices did not render the evidence insufficient to support the jury's verdict.

*Id.* at *23. Likewise, two years later the Dallas court again followed the above. In *Canadian Real Estate Holdings, LP v. Karen F. Newton Revocable Trust*, No. 05-20-00747-CV, 2022 WL 4545572, at *4 (Tex. App.-Dallas Sept. 29, 2022, no pet.) (mem. op.) the Dallas Court of Appeals disagreed with Appellant's objection that heavy redactions in Appellees' billing records obscured meaningful review of attorney time, block billing and inadequate descriptions. The court stated, "In this

case, the redacted material includes attorney conversations, communications among client and co-counsel, and the subject matter of research. We have concluded that such matters are appropriately redacted, especially when, as here, there is no claim that the material is not privileged." *Id.* It should be noted that Novoterra's attorney did not claim that the attorney-client and work-product privileges raised by McGhee's attorney were in fact not privileged.

Furthermore, the quotes set forth above from the second hearing on attorney's fees evidence that McGhee's attorney fully informed the trial court of numerous matters supported by case law that the court should have considered that entitled him to complete his testimony on the recovery of attorney's fees. However, the trial court refused to allow McGhee's attorney to further testify to attempt to prove up legally sufficient evidence on same. Due to all of the above, we conclude that the trial court abused its discretion in excluding McGhee's attorney's testimony on attorney's fees.

## 3. Harm and Directed Verdict on Attorney's Fees

We now turn to whether the exclusion of McGhee's attorney's testimony was harmful. *See* Tex. R. App. P. 44.1(a) (providing that a matter may be reversed only if the error likely caused the rendition of an improper judgment or prevented the appellant from presenting his cause on appeal). The Lease provided that the prevailing party could recover attorney's fees, and McGhee prevailed.

Novoterra moved for a directed verdict on attorney's fees, arguing there was no evidence the fees were reasonable or necessary, which the trial court granted. The trial court's erroneous exclusion of McGhee's expert's testimony about the reasonableness and necessity of the attorney's fees led to the absence of evidence on which the trial court based the directed verdict. We conclude the trial court's erroneous exclusion of McGhee's expert's testimony on attorney's fees likely caused the rendition of an improper judgment and thus was harmful. *See id.* We sustain issue three. Again, the trial court granted Novoterra's directed verdict as to all McGhee's claims against Novoterra except breach of contract and for failing to return the security deposit under Property Code sections 92.103, 92.104, and 92.109. Therefore, we reverse the trial court's directed verdict on the issue of attorney's fees and remand the case to the trial court with instructions to conduct further proceedings consistent with this opinion so that a factfinder may consider awarding McGhee reasonable and necessary attorney's fees tied to his suit to recover his deposit.

## V. Issue Four: Denial of Motion to Compel Discovery

In issue four, McGhee complains the trial court erroneously denied his Motion to Compel Interrogatory Responses by improperly counting discrete subparts of each question.

49

## A. Standard of Review

The scope of discovery generally lies within the trial court's discretion. *In re CSX Corp.*, 124 S.W.3d 149, 152 (Tex. 2003) (orig. proceeding) (per curium). We review a trial court's ruling on a motion to compel discovery for an abuse of discretion. *See Stewart v. Lexicon Genetics, Inc.*, 279 S.W.3d 364, 373 (Tex. App.—Beaumont 2009, pet. denied).

## B. Law and Application: McGhee has failed to show how the trial court's denial of his Motion to Compel harmed him or identify the specific evidence he was denied.

A party is typically entitled to obtain discovery on any unprivileged matter relevant to the subject of the pending action and appears reasonably calculated to lead to the discovery of admissible evidence. *See* Tex. R. Civ. P. 192.3(a); *Remaley v. TA Operating LLC*, 561 S.W.3d 675, 683 (Tex. App.—Houston [14th Dist.] 2018, pet. denied). If we determine the trial court abused its discretion, we must still determine whether the error probably caused the rendition of an improper judgment. *Ford Motor Co. v. Castillo*, 279 S.W.3d 656, 667 (Tex. 2009) (citing Tex. R. App. P. 44.1(a)); *see also Remaley*, 561 S.W.3d at 683. As we have already explained elsewhere in this opinion, error is harmful if it "'probably caused the rendition of an improper judgment' or 'probably prevented the appellant from properly presenting the case to the court of appeals.'" *Ford Motor Co.*, 279 S.W.3d at 667 (quoting Tex. R. App. P. 44.1(a)).

We will assume without deciding the trial court abused its discretion in denying McGhee's Motion to Compel. Even so, he has failed to contend or explain how the denial of his Motion to Compel was harmful. Absent a showing of harm, we overrule issue four. *See* Tex. R. App. P. 44.1(a); *Ford Motor Co.*, 279 S.W.3d at 667.

## VI. Novoterra's Cross-Point: Disregarding Part of Jury's Damage Award

Novoterra raises one cross-point, arguing the trial court properly disregarded the jury's award of damages exceeding the security deposit in response to Question 2. Question 2 instructed the jury to "[c]onsider the following elements of damages, if any, and none other[,]" then provided only a blank for "Security Deposit" damages. The jury answered, "$31,000 and $3,650." The $3,650 amount corresponded with the amount of the security deposit, but the trial court disregarded the added award of $31,000 based on Novoterra's Motion to Disregard.

It should be noted that McGhee did not object to the charge in the trial court and does not complain about charge error on appeal. Further, on appeal McGhee does not assign error to the trial court disregarding the jury's finding of $31,000 in response to Question 2. "A court of appeals may not reverse a trial court judgment on a ground not raised." *Pike v. Tex. EMC Mgmt., LLC*, 610 S.W.3d 763, 782 (Tex. 2020) (citation omitted). Therefore, we do not address unassigned error. *See id.*; *Pat Baker Co. v. Wilson*, 971 S.W.2d 447, 450 (Tex. 1998) (prohibiting appellate court

from reversing a trial court's judgment absent properly assigned error); *Dueitt v. Dueitt*, Nos. 09-05-422 CV, 09-05-423 CV, 09-05-424 CV, 09-05-431 CV, 09-05-432 CV, 2007 WL 274739, at *2 (Tex. App.—Beaumont Feb. 1, 2007, pet. denied) (mem. op.) (citations omitted) (refusing to consider the propriety of damage award because appellant brought "no appellate issue addressing it"); *see also* Tex. R. App. P. 47.1 (requiring appellate court to hand down a written opinion brief as practicable that addresses all issues necessary to final disposition of the appeal). Except the attorney's fees issue, we have overruled McGhee's issues that would require reversing the judgment. Thus, we need not reach this cross-point, as it would constitute an advisory opinion. *See* Tex. R. App. P. 47.1; *Pike*, 610 S.W.3d at 782; *Pat Baker Co.*, 971 S.W.2d at 450; *Dueitt*, 2007 WL 274739, at *2; *see also Sanchez v. Braden*, No. 05-97-00811-CV, 1999 WL 378426, at *2 (Tex. App.—Dallas June 11, 1999, no pet.) (mem. op.) (declining to address cross-point where it overruled appellant's issue and affirmed the trial court's judgment, reasoning that "any consideration of his cross-point would result in a purely advisory opinion").

## VII. Conclusion

Having overruled issues one, two, and four, we affirm the portions of the judgment awarding McGhee $11,050.00 for wrongful retention of the security deposit, one-half of the costs of court, and post-judgment interest. Again, the trial court granted Novoterra's directed verdict as to all McGhee's claims against

52

Novoterra except breach of contract and for failing to return the security deposit under Property Code sections 92.103, 92.104, and 92.109. Having concluded the trial court abused its discretion by determining McGhee's attorney's fees expert disclosures were inadequate and subsequently excluding the testimony on reasonableness and necessity, which resulted in harm, we sustained issue three. Therefore, we reverse the trial court's directed verdict on the issue of attorney's fees and remand the case to the trial court with instructions to conduct further proceedings consistent with this opinion so that a factfinder may consider awarding McGhee reasonable and necessary attorney's fees tied to his suit to recover his deposit.

AFFIRMED IN PART, REVERSED AND REMANDED IN PART.

W. SCOTT GOLEMON
Chief Justice

Submitted on September 8, 2023
Opinion Delivered May 30, 2024

Before Golemon, C.J., Horton and Johnson, JJ.